UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DIEGO LARA,<br><br>Defendant. | 3:16-CR-30160-RAL<br><br>OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

Defendant Diego Lara filed a motion seeking compassionate release under the First Step Act and 18 U.S.C. § 3582(c)(1)(A). Doc. 36. Pursuant to the Amended Standing Order 20-06, Lara's case was categorized as Low Priority on January 15, 2021. Doc. 39. On February 5, 2021, the Federal Public Defender for the Districts of South Dakota and North Dakota docketed a notice of intent not to supplement Lara's motion. The United States opposed the motion. Doc. 42. Lara did not submit a reply to the United States's opposition brief. For the following reasons, this Court denies Lara's motion for compassionate release.

I.  **Background**

On February 14, 2017, Lara pleaded guilty to tampering with a witness in violation of 18 U.S.C. § 1512(b)(1). Docs. 18, 22. Under the sentencing guidelines, Lara's total offense level for tampering with a witness was 27 and he fell into criminal history category IV. Doc. 27 at ¶¶ 22, 32, 71. As a result, Lara's advisory guideline range was 100 to 125 months in custody for the offense of tampering with a witness. Doc. 27 at ¶ 71. On April 25, 2017, this Court held a sentencing hearing in Lara's case and imposed a custody sentence of 60 months to run consecutively to the sentence imposed in United States v. Lara, 3:14-CR-30097. Docs. 30, 32 at 2.

Lara's pro se motion seeks compassionate release based on his medical conditions, the time he has already served in custody, and the global COVID-19 pandemic as justification. Doc. 36. Lara is currently incarcerated at USP Coleman II, a high security penitentiary, in Sumterville, Florida. See Fed. Bureau Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Mar. 30, 2021). Lara is scheduled for release on February 3, 2022. Id. He is 28 years old. Id.

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. The Centers for Disease Control and Prevention (CDC) has identified certain underlying health conditions that can put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease (COPD), cystic fibrosis, and pulmonary hypertension), diabetes (type 1 or type 2), dementia or other neurological conditions, heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state, liver disease, overweight and obesity, sickle cell disease, history of stroke or cerebrovascular disease, substance abuse disorders, and several others. See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021) (last checked Mar. 30, 2021).

The total population at USP Coleman II is currently 863 persons. https://www.bop.gov/locations/institutions/clp/ (last visited Mar. 30, 2021). USP Coleman II has no active inmate cases of COVID-19 as of March 30, 2021. See BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last visited Mar. 30, 2021). There has been one inmate death reported, and 207 inmates have recovered from COVID-19 at USP Coleman II. Id. The Bureau

of Prisons (BOP) has implemented a COVID-19 vaccination plan to administer vaccines to inmates and staff. As of March 30, 2021, 100,674 doses have been administered systemwide. Id. At the Coleman Federal Correctional Complex, which encompasses USP Coleman II, 451 staff and 1111 inmates have been fully inoculated to date. Id. (last checked Mar. 30, 2021). Lara is among those who received a vaccination. Doc. 38 at 13.

This Court has conducted a detailed review of Lara's medical records in this case. The records confirm Lara suffers from hypothyroidism, syphilis, several substance use disorders, borderline personality disorder, gender dysphoria, and several others. Doc. 38 at 10. Lara's medication regimen includes levothyroxine for hypothyroidism, spironolactone for blood pressure, and estradiol for gender dysphoria. Doc. 38 at 15. On September 30, 2002, an ultrasound was read as showing "solid appearing retroareolar mass like region with the right breast." Doc. 38 at 193, 232. Lara was referred for a mammogram for further delineation. Doc. 38 at 193. Lara later refused the mammogram, and it was not performed. Doc. 38 at 18.

## II. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, 892 (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### III. Discussion

Lara submitted a reduction in sentence application to the warden of his institution on June 23, 2020. Doc. 36-1 at 5. The warden denied Lara's request on July 1, 2020. Doc. 36-1 at 3–4. Therefore, this Court may entertain Lara's motion directly.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c); United States v. Moore, 963 F.3d 725, 727 (8th Cir. 2020). In conducting its analysis on compassionate release motions, this Court typically begins by considering the applicable § 3553(a) sentencing factors. Here, this Court begins its analysis with Lara's claimed "extraordinary and compelling reasons" for compassionate release.

Congress directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. § 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's

terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows the Director of the BOP to find "extraordinary and compelling" reasons other than, or in combination with, those specifically listed in subdivisions (A) through (C). U.S.S.G. § 1B1.13 cmt. n.1(D).

Since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has lacked a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)). The United States Court of Appeals for the Eighth Circuit has not yet addressed this issue. See United States v. Vangh, -- F.3d --, 2021 WL 952580, *3 n.3 (8th Cir. March 15, 2021); Loggins, 966 F.3d at 892; and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).

Lara argues he suffers from "a life-threatening medical condition that meets the criteria of terminal and debilitat[ing] medical conditions." Doc. 36 at 3. Lara also requests this Court to

consider that more than 75% of his sentence has been served. Doc. 36 at 3. Based on his contentions, this Court examines Lara's pro se motion for compassionate release under the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D).

Although claiming to have a life-threatening condition, Lara fails to identify what condition that is. This Court's detailed review of the medical records reveals Lara is young and generally healthy. Though Lara has a history of substance use disorder, which has recently been identified by the CDC as potentially increasing the risk of severe illness from COVID-19, this Court does not view that condition as an extraordinary and compelling reason for a sentence reduction. This Court believes many incarcerated persons likely have substance use disorders, so that condition alone, in the context of compassionate release, is not "extraordinary and compelling." Lara's risk because of his history of substance abuse is mitigated by his recent vaccination. Shortly after filing this pro se motion, Lara received a first dose of a COVID-19 vaccine on January 7, 2021. Though updated medical records are not before this Court, it is likely Lara has been fully inoculated against the virus by now. Thus, his risk of severe illness from COVID-19 is exceedingly low. See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html (last visited Mar. 30, 2021).

The COVID-19 pandemic has impacted this country in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). This Court is familiar with the precautions implemented by the BOP to protect inmates from COVID-19. See BOP Implementing Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Mar. 30, 2021). No measures are 100% effective, and COVID-19 continues to be a health concern in correctional institutions as

well as in the general public. USP Coleman II, where Lara is placed, has no active inmate cases of COVID-19 currently. Though one inmate death occurred as a result of COVID-19, the vast majority of inmates (207 in all) have recovered since the pandemic began. USP Coleman II appears to be taking appropriate measures to treat and care for inmates who contract COVID-19.

The Court's original sentence, which was well below the advisory guideline range, was chosen with care, considering Lara's offense, history, and characteristics, his and his community's needs, and all of the other applicable 3553(a) sentencing factors. A further reduction in his sentence would not reflect the seriousness of the offense, promote respect for law, or provide just punishment. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify compassionate release under the First Step Act.

## IV.     Conclusion and Order

Therefore, it is hereby

ORDERED that Lara's motion for compassionate release, Doc. 36, is denied.

DATED this 30th day of March, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE